**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Troy LYNDON, and Ronald Zaucha, Defendants.**

**Civil No. 13–00486 SOM–KSC.**

United States District Court, D. Hawai'i.

Signed June 13, 2014.

Amy J. Longo, Karen Matteson, Lucee Kirka, U.S. Securities and Exchange Commission, Los Angeles, CA, for Plaintiff.

Troy Lyndon, Honolulu, HI, pro se.

Donny E. Brand, Brand Law Firm, Santa Ana, CA, Lars Peterson, Law Office of Lars Peterson LLLC, Honolulu, HI, for Defendants.

## ORDER DENYING MOTION TO DISMISS

SUSAN OKI MOLLWAY, Chief Judge.

## I. INTRODUCTION.

Defendant Ronald Zaucha moves to dismiss the Complaint of September 24, 2013, arguing that the court lacks personal jurisdiction over him, that venue is improper, that the Complaint fails to state claims on which relief can be granted, and that the Complaint's allegations of fraud are not pled with sufficient particularity. The court rejects each of these arguments and denies the motion.

## II. FACTUAL BACKGROUND.

This Factual Background section is based on the allegations contained in the Complaint of September 24, 2013. *See* Complaint, ECF No. 1. The facts stated in this section are not meant to be findings of fact, but only a description of the facts alleged in the Complaint.

Troy Lyndon is the founder, chief executive officer, chief financial officer, and chairman of the board of Left Behind Games, Inc. *See* Complaint ¶¶ 3 and 13, ECF No. 1, PageID #s 2 and 4. Lyndon resides in Hawaii and has filed a Chapter 7 bankruptcy in the District of Hawaii. *Id.* ¶ 13, PageID # 4.

Left Behind was incorporated in Delaware in 2002 and reincorporated in Nevada in 2011. Its corporate status has been revoked in Nevada and forfeited in Delaware. *Id.* ¶ 15, PageID # 4-5. Left Behind became a public company in 2006. *Id.* Its stock was registered with the Securities and Exchange Commission and traded on the OTCQB exchange under the ticker symbol "LFBG." *Id.* ¶ 17, PageID # 5. Left Behind terminated all of its employees at the end of 2011. *Id.* ¶ 18, PageID # 5.

Ronald Zaucha, a pastor, is Lyndon's close friend and has been a consultant for Left Behind Games since 2008. Zaucha also owns a company called Lighthouse Distributors, Inc. *See* Complaint ¶¶ 3 and 14, ECF No. 1, PageID # 2 and 4. Lighthouse was purportedly a distributor of video games, including Left Behind's games.

Lyndon and Zaucha had a Lighthouse employee sign the distributor agreement memorializing that relationship on behalf of Lighthouse, meaning that Zaucha's name was not mentioned in the agreement. Although the agreement called for Left Behind to sell and ship its video games to Lighthouse, Lighthouse and Left Behind were located in the same building. *Id.* ¶ 58 and 60, PageID # 14–15. Lighthouse ceased operations in 2012, shortly after Left Behind ceased operations. *Id.* ¶ 19, PageID # 5.

Beginning in 2009, Left Behind issued Zaucha approximately 1.7 billion shares of its common stock, in exchange for Zaucha's consulting services. *Id.* ¶¶ 3–4, 23–27, 37, PageID #s 2, 6–8, 9–10. The consulting agreements between Left Behind and Zaucha did not specify his job duties, referring instead to the provision of marketing and business services. *Id.* ¶ 28, PageID # 8. Zaucha may have authored a script used by Left Behind staff who called pastors from a free database maintained by another entity. *Id.* ¶ 32, PageID #s 8–9. Zaucha allegedly ran staff meetings and provided informal counseling to employees, rather than consultation services concerning marketing and business, as contemplated by the consultation agreements. *Id.*

While Zaucha was a Left Behind consultant, Left Behind was unprofitable and severely undercapitalized. *Id.* ¶ 4, PageID # 2. The Complaint alleges that the consulting agreements between Zaucha and Left Behind were a "sham," whose true purpose was to enable Zaucha to sell millions of unregistered shares of Left Behind common stock, kicking back stock proceeds to Left Behind, which was in need of funds. *Id.* ¶ 36, PageID # 9. In other words, although Zaucha allegedly provided few services to Left Behind, he received shares of Left Behind that he sold, there-

after "kicking back" some of the proceeds to Left Behind. *Id.* ¶ 55, PageID # 13.

According to the Complaint, at Lyndon's direction, Zaucha "sold virtually all of this [Left Behind] stock, reaping approximately $4.6 million in sales proceeds. Zaucha then kicked back approximately $3.3 million of these proceeds to the company in three ways." *Id.* ¶ 4, PageID # 2. First, Zaucha paid Left Behind $871,169 in "early-sell fees." *Id.* ¶¶ 5 and 97, PageID #s 2 and 24. Second, Zaucha's company, Lighthouse, purchased about $1.3 million of Left Behind's old inventory. Although Lighthouse was supposedly a distributor of video games, it sold only a fraction of this inventory for a few thousand dollars. It instead gave most of it away, suggesting that the money allegedly paid for the inventory was truly for a different purpose. *Id.* ¶¶ 6 and 67–68, PageID # 2–3, and 15–16. Finally, Zaucha also "kicked back" about $1 million to Left Behind in the form of "loans" and "investments." *Id.* ¶¶ 8 and 97, PageID #s 3 and 24.

Zaucha allegedly kept $1.28 million from the stock sales of Left Behind, using that money to pay his living expenses, to fund Lighthouse's operations, and to purchase property in Hawaii and California. *Id.* ¶ 9, 97(d), PageID #s 3 and 24.

The Complaint alleges:

As a result of the purported sales to Lighthouse, [Left Behind's] revenues were materially overstated in its quarterly reports on Form 10–Q filed with the SEC for the second and third quarters of fiscal year 2011, and in its annual report on Form 10–K filed with the SEC for its fiscal year 2011 (which ended March 31, 2011). [Left Behind's] quarterly and annual reports were also misleading because they did not disclose that its transactions with Zaucha were related party transactions. Nor did they disclose the sham, round-trip na-

ture of the transactions, where [Left Behind] essentially paid for its own revenue by paying Zaucha in stock and then having most of his stock sale proceeds used to purchase [Left Behind] product through Zaucha's company, Lighthouse.

*Id.* ¶ 7, PageID # 3; *see also id.* ¶ 63, PageID # 15 (alleging that Left Behind's Form 10–K indicated that its 2011 revenues increased $1,485,044 over the previous year as a result of Lighthouse's alleged purchases), ¶ 68 (alleging that Lighthouse gave away most of the Left Behind product and that Left Behind failed to disclose this in its financial statements and Forms 10–Q, 10–Q/A, and 10–K), and ¶¶ 82, 85, and 93–94 (alleging that Left Behind filed Forms 10–Q, 10–Q/A, and 10–K with false and misleading revenue statements as a result of the "sham transactions using the proceeds of the sale of Zaucha's stock").

The Complaint further alleges that Zaucha knew that, under SEC Rule 144, 17 C.F.R. § 230.144, the common stock he received could not be sold within a six-month period. *Id.* ¶ 40, PageID # 10. Allegedly to get around this restriction, Lyndon sent faxes to Left Behind's stock transfer agent, asking that "New Restricted Stock Certificates" be issued to Zaucha with the following instruction, "Note, hold for 144 paperwork to remove legend." The faxes also backdated the beneficial ownership date of the stock six months. *Id.* ¶ 42, PageID # 10.

The reference to "144 paperwork to remove legend" was a reference to multiple opinion letters from Left Behind's attorney. In issuing the opinion letters, the attorney relied on Zaucha's "Seller's Representation Letter" for a "non-affiliate," which stated:

Neither the undersigned, nor any person or entity listed below, presently is, or in the prior three months has been, an "Affiliate["] of the Company as that term is used in paragraph (a) or Rule 144 (i.e., a person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the Company).

*Id.* ¶¶ 43, 45, PageID #s 10–11. Zaucha further represented that his stock "has been owned and fully paid for … in excess of one (1) year." *Id.* ¶ 44, PageID # 11. Zaucha's representations were allegedly false, in that he was an "affiliate" of Left Behind who was allegedly controlled by Lyndon. *Id.* ¶ 46, PageID # 11.

From November 2009 until June 2011, based on Zaucha's representations, Left Behind's attorney issued more than 20 opinion letters addressed to Left Behind's transfer agent that "opined" that Zaucha's shares of Left Behind could be sold by Zaucha without registering them with the SEC in accordance with Rule 144. *Id.* ¶ 45, PageID # 11.

Based on these opinion letters, Left Behind's transfer agent removed the restrictive legends from the common stock and sent the stock to Zaucha's brokerage accounts, from which Zaucha offered and sold the shares into the market. *See id.* ¶ 47, PageID # 11. Paragraph 48 of the Complaint alleges that, between August 4, 2009, and October 10, 2011, Zaucha had accounts at six different brokerage firms from which he sold a total of more than 1.7 billion unregistered shares of Left Behind for more than $4.6 million. *Id.* ¶ 46, PageID # 12. Lyndon supposedly instructed Zaucha as to the price at which to sell the stock, as well as to how the proceeds would be split, including a "kick back" of $871,169 to Left Behind as an "early sell fee." *Id.* ¶ 49–50, PageID # 12–13.

Left Behind's financial statements for the year ending March 31, 2011, were au-

dited. *Id.* ¶ 70, PageID # 16. The auditor discovered Zaucha's relationship with Lighthouse and was concerned that Zaucha may have been using the proceeds from his sale of Left Behind stock to purchase Left Behind product in what was a "circle of cash." *Id.* ¶ 72, PageID # 16. The Complaint alleges that, on or about July 29, 2011, Zaucha sent the auditors a letter in which he knowingly or recklessly made various misrepresentations, such as that (1) the sale/purchase of video games between Left Behind and Lighthouse involved "real transactions"; (2) the transactions were in no way connected with his consulting agreement with Left Behind; (3) there were no side agreements concerning the consulting and distribution agreements; and (4) the decision to invest proceeds from Zaucha's sale of Left Behind stock was independent from the sale of that stock. *Id.* ¶¶ 72–74, PageID # 16–17.

Zaucha and Lyndon are named as Defendants in the Complaint's First claim for Relief (violation of sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a) and 77e(c)), Second Claim for Relief (violation of section 17(a) of the Securities Act, 15 U.S.C. § 77q(a)), and the Third Claim for Relief (violation of section 10(b) of the Exchange Act and Rule 10b–5 thereunder, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b–5). Lyndon is named as a Defendant in other causes of action alleged in the Complaint.

## III. ANALYSIS.

### A. The Court Has Personal Jurisdiction Over Zaucha.

Zaucha contends that this court lacks personal jurisdiction over him under the principles set forth in *International Shoe Company v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. He specifically argues that he lacks

ties to Hawaii sufficient for the court to exercise general or specific jurisdiction over him. In an analogous situation, the Ninth Circuit Court of Appeals rejected this argument. *See Securities Investor Protection Corp. v. Vigman,* 764 F.2d 1309 (9th Cir.1985).

In *Vigman,* the district court dismissed a defendant, reasoning that it lacked personal jurisdiction over the claims asserted against the defendant under section 10(b) of the Security Exchange Act of 1934 and Rule 10b–5 thereunder. *Id.* at 1312. The Ninth Circuit reversed. Examining *International Shoe* and its progeny, the Ninth Circuit noted that those cases generally deal with a court's jurisdiction over a non-resident defendant through a state's long-arm statute. Thus, when a federal district court exercises diversity jurisdiction, the Due Process Clause requires that the defendant have contacts, ties, or relations with the forum state sufficient to confer personal jurisdiction over the defendant. *Id.* at 1315. However, in a case in which the court exercises jurisdiction based on federal question jurisdiction, as opposed to diversity jurisdiction, minimum contacts with a state do not play the same limiting role. *Id.* The Ninth Circuit stated that, when a federal statute confers nationwide service of process, the issue for due process purposes is whether the party has sufficient contacts with the United States, not any particular state. *Id.* at 1315–16.

Section 27 of the Security Exchange Act of 1934, 15 U.S.C. § 78aa, provides:

Any suit or action to enforce liability or duty created by this chapter [, Title 15, Chapter 2B (Security Exchanges),] or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and

process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

15 U.S.C. § 78aa. *Vigman* determined that the statute authorized nationwide service of process. *Id.* at 1315. The Ninth Circuit therefore held that personal jurisdiction over the defendant in *Vigman* could be asserted if the defendant had minimum contacts with the United States. *Id.* at 1316.

■ As in *Vigman*, the Complaint in this matter asserts a violation of section 10(b) of the Exchange Act and Rule 10b–5 thereunder. *See* Complaint, Third Claim for Relief. Under *Vigman*, this court may exercise personal jurisdiction over that claim if Zaucha has minimum contacts with the United States. Zaucha's motion notes that he is a resident and domiciliary of California. *See* ECF No. 97, PageID #s 1085, 1087, and 1089. Zaucha also owns an investment condominium in Hawaii. *Id.*, PageID # 1087. Zaucha appears to have had a Hawaii driver license issued to him on November 16, 2011. *See* ECF No. 119–1, PageID # 1406. Zaucha also notes that "most of the acts ple[d] in the SEC's complaint are alleged to have occurred in California." *Id.*, PageID # 1092. Given his contacts with California and Hawaii, Zaucha unquestionably has minimum contacts with the United States such that this court may exercise personal jurisdiction over the claims against him based on section 10(b) of the Exchange Act and Rule 10b–5.

Having established that this court has personal jurisdiction over Zaucha with respect to the Third Cause of Action, this court must still determine whether it has personal jurisdiction over him with respect to the other two claims asserted against him. *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir.2004) ("Personal jurisdiction must exist for each claim asserted against a defendant."). This court determines that it does.

The Complaint also asserts claims against Zaucha under sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a) and 77e(c) (First claim for Relief), and section 17(a) of the Securities Act, 15 U.S.C. § 77q(a) (Second Claim for Relief). These statutes are not located within Title 15, Chapter 2B, which would direct the court to 15 U.S.C. § 78aa to determine whether nationwide service of process is allowed for the claims. Instead, the alleged violations are part of Title 15, Chapter 2A, subchapter 1, 15 U.S.C. §§ 77a to 77aa. The court therefore looks to 15 U.S.C. § 77v to determine whether nationwide service of process is authorized for these claims.

In relevant part, that section gives the district courts of the United States "jurisdiction of offenses and violations under this subchapter [, Title 15, Chapter 2A, subchapter 1, 15 U.S.C. §§ 77a to 77aa,] and under the rules and regulations promulgated by the Commission in respect thereto." 15 U.S.C. § 77v(a). That section also provides, "Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found." *Id.*

■ Given § 77v(a)'s allowance of service of process "in any other district of which the defendant is an inhabitant or wherever the defendant may be found," this court concludes that, like § 78aa, § 77v(a) also allows for nationwide service of process. Accordingly, *Vigman* is instructive on whether this court has person-

al jurisdiction over Zaucha with respect to the claims under 15 U.S.C. § 77e(a) and 77e(c) and 15 U.S.C. § 77q(a). For the reasons set forth above, the court determines that it has personal jurisdiction over Zaucha with respect to these claims, as Zaucha unquestionably has minimum contacts with the United States such that this court has an independent basis for personal jurisdiction with respect to the claims.

The court notes that, even if such an independent basis for personal jurisdiction with respect to the claims asserted in the First and Second Claims for Relief was lacking, the court would exercise pendent personal jurisdiction over the claims, as they arise under a nucleus of operative facts that is common to the Third Claim for Relief. *See Action Embroidery Corp.,* 368 F.3d at 1180–81.

### B. Venue is Proper in This District.

Zaucha argues that, under 28 U.S.C. § 1406(a), venue is improper in this district. This court disagrees.

In *Vigman,* the court not only examined personal jurisdiction under 15 U.S.C § 78aa for alleged violations of section 10(b) of the Exchange Act and Rule 10b–5 thereunder, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b–5, it also looked at the issue of venue for such claims. *Vigman* adopted the "co-conspirator" theory of venue for violations of securities statutes, which states:

> where an action is brought against multiple defendants alleging a common scheme of acts or transactions in violation of securities statutes, so long as venue is established for any of the defendants in the forum district, venue is proper as to all defendants. This is true even in the absence of any contact by some of the defendants in the forum district.

*Vigman,* 764 F.2d at 1317. *Vigman* did not limit its holding to cases in which venue was asserted under § 78aa, as it agreed with other courts that had applied the co-conspirator theory of venue under other securities statutes, including under 15 U.S.C. § 77a. *See id.* at 1318 (citing with approval *SEC v. Nat'l Student Marketing Corp.,* 360 F.Supp. 284 (D.D.C. 1973)).

Under 15 U.S.C. § 78aa, a suit alleging a violation of section 10(b) of the Exchange Act and Rule 10b–5 thereunder, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b–5, "may be brought ... in the district wherein the defendant is found or is an inhabitant or transacts business." Under 15 U.S.C. § 77v(a), a suit alleging a violation of sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a) and 77e(c), or of section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), similarly "may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein." Although there is a dispute as to whether Zaucha is really a resident of California as he claims, or a resident of Hawaii based on the Hawaii driver's license issued to him in November 2011, there is no dispute that Lyndon lives in Hawaii. Lyndon allegedly violated the same statutes as Zaucha through the same scheme. Accordingly, under the co-conspirator theory of venue, venue with respect to the claims against Zaucha is also proper here, as venue is proper with respect to Lyndon.

### C. The Court Declines to Transfer the Case to California.

Zaucha argues that, under 28 U.S.C. § 1404(a), this case should be transferred to California based on the convenience of

the witnesses and the parties. The court declines to transfer this case at this time.

In 28 U.S.C. § 1404(a), Congress codified the common law doctrine of *forum non conveniens*. The statute says, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

■ Rather than requiring dismissal, a district court may, pursuant to § 1404(a), transfer any civil action to any other district or division where it might have been brought if it is in the interests of justice and convenient for the parties and witnesses. *See Lung v. Yachts Int'l, Ltd.,* 980 F.Supp. 1362, 1370 (D.Haw.1997). The purpose of § 1404(a) is to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Id.* at 1369 (citing *Van Dusen v. Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).

A motion to transfer venue under § 1404(a) requires this court to weigh multiple factors to determine whether transfer is appropriate. These factors may include: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling nonparty witnesses, and (8) the ease of access to sources of proof. *See Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498–99 (9th Cir.2000).

■ At this time, the convenience of the parties does not weigh in favor or transferring this matter to California. Although Zaucha claims to be a resident of California, the other Defendant in this case is a resident of Hawaii and the SEC chose to litigate this matter in Hawaii. Because Lyndon, the other Defendant in this case, is still challenging the consent judgment in this case, the court cannot say with certainty that it would be more convenient for the parties to litigate this matter in California.

■ Nor does the convenience of the witnesses weigh in favor of a transfer. The record does not indicate who the witnesses at trial will be. Thus, although Zaucha says he expects to call witness from outside of Hawaii, the court cannot tell whether there will also be witnesses from Hawaii. Nor can the court tell what kind of travel these witnesses will have to undertake to testify at trial.

■ Finally, there has been no demonstration that the interests of justice require a transfer of this matter to California. At this stage in the case, the court cannot tell who will be testifying, where the evidence is located, whether this court could compel any particular witness to testify, and what the difference in cost would be between litigating this matter in this district versus in California. Simply put, under the circumstances presented here, there is presently insufficient support for a transfer under § 1404(a).

### D. The Complaint Properly Pleads Viable Claims With Respect to Zaucha.

Zaucha also seeks dismissal of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the claims asserted against him fail to plead facts on which relief can be granted

and fail to plead fraud with particularity. The court disagrees.

 Under Rule 12(b)(6), a court reviewing claims for sufficiency of pleading is generally limited to the contents of a complaint. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001); *Campanelli v. Bockrath,* 100 F.3d 1476, 1479 (9th Cir.1996). If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment. *See Keams v. Tempe Tech. Inst., Inc.,* 110 F.3d 44, 46 (9th Cir.1997); *Anderson v. Angelone,* 86 F.3d 932, 934 (9th Cir.1996). However, courts may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir.2003). Documents whose contents are alleged in a complaint and whose authenticity is not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss. *See Branch v. Tunnell,* 14 F.3d 449, 453–54 (9th Cir.1994).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Fed'n of African Am. Contractors v. City of Oakland,* 96 F.3d 1204, 1207 (9th Cir.1996). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *Sprewell,* 266 F.3d at 988; *In re Syntex Corp. Sec. Litig.,* 95 F.3d 922, 926 (9th Cir.1996). Additionally, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell,* 266 F.3d at 988.

 Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988) (citing *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir.1984)).

"[T]o survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotation marks omitted); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 677, 129 S.Ct. 1937.

 In the court's usual prehearing inclinations, *see* ECF No. 124, the court asked Zaucha to come to the hearing prepared to specifically identify what element of any claim asserted against him was not sufficiently pled in the Complaint, as the

court was concerned that Zaucha had based his motion to dismiss on general assertions of insufficient pleading. Rather than identify any such deficiency at the hearing, Zaucha rested on his papers. The court therefore deems Zaucha to have waived any argument that the Complaint is deficient in any way not identified in his motion to dismiss. That motion is unpersuasive, and the court denies it.

**1. The First Claim for Relief Properly Pleads a Claim that Zaucha Offered for Sale and Sold Unregistered Securities in Violation of Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).**

The Complaint's First Claim for Relief asserts violations of sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a) and 77e(c), which state:

(a) Sale or delivery after sale of unregistered securities

Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

. . . .

(c) Necessity of filing registration statement

It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of this title.

In *Securities & Exchange Commission v. Phan*, 500 F.3d 895, 902 (9th Cir.2007), the Ninth Circuit quoted *Berckeley Investment Group v. Colkitt*, 455 F.3d 195, 212 (3d Cir.2006), for its statement that, to establish a violation under 15 U.S.C. § 77e(a) and 77e(c), a plaintiff "must point to evidence that: (1) no registration statement was in effect as to the securities; (2) [defendant] sold or offered to sell the securities; and (3) the sale or offer was made through interstate commerce." As used in 15 U.S.C. §§ 77e(a) and 77e(c), "security" means "any . . . stock." 15 U.S.C. § 77b(a)(1).

Paragraph 48 of the Complaint alleges that, between August 4, 2009, and October 10, 2011, Zaucha had accounts at six different brokerage firms and that he sold more than 1.7 billion unregistered shares of Left Behind stock into the market via these brokerage firms for more than $4.6 million. *Id.* ¶ 48, PageID # 12. The Complaint therefore alleges that Zaucha offered for sale and actually sold unregistered stock of Left Behind through interstate commerce. It is simply not the case that the Complaint contains "nothing more than a bare bones, formulaic recitation of legal conclusions." *See* ECF No. 97, PageID # 1074.

To the extent Zaucha argues that the Complaint should be dismissed because Zaucha relied on attorneys' opinions as to whether his transactions were exempt from the registration requirements, that is

not an argument that is properly brought on the present motion to dismiss, as it is based on facts beyond those alleged in the Complaint. It is also incorrect. The Ninth Circuit has stated, "Because Section 5[, 15 U.S.C. 77e,] is a strict liability statute, it appears that the district court erred in determining that good faith reliance on counsel could preclude liability under the statute." *SEC v. CMKM Diamonds, Inc.,* 729 F.3d 1248, 1257 n. 6 (9th Cir.2013). The court notes, in any event, that the Complaint alleges that Zaucha procured the attorneys' opinions by knowingly providing them with false information. *See* Complaint ¶¶ 43–46, PageID #s 10–11.

**2. The Second and Third Claims for Relief Properly Plead Fraudulent Conduct or Practices in Connection With the Offer or Sale of Securities in Violation of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a) and Section 10(b) of the Exchange Act and Rule 10b–5 thereunder, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b–5.**

The Complaint's Second Claim for Relief asserts a violation of section 17(a) of the Securities Act, 15 U.S.C. § 77q(a). That section states:

(a) Use of interstate commerce for purpose of fraud or deceit

It shall be unlawful for any person in the offer or sale of any securities (including security-based swaps) or any security-based swap agreement (as defined in section 78c(a)(78) of this title) by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

The Complaint's Third Claim for Relief asserts a violation of section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), which makes it unlawful for any person by means of interstate commerce "[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe . . ."

The Complaint's Third Claim for Relief also asserts a violation of Rule 10b–5, 17 C.F.R. § 240.10b–5, which makes it unlawful

for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

 The Ninth Circuit reads section 17(a)(1), section 10(b), and Rule 10b–5

as prohibiting fraudulent conduct or practices in connection with the offer or sale of securities. *See SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 855 (9th Cir.2001). "These antifraud provisions forbid making a material misstatement or omission in connection with the offer or sale of a security by means of interstate commerce." *Id.* at 855–56.

■■■■■ Violations of section 17(a)(1), section 10(b), and Rule 10b–5 require a showing of recklessness, which "is conduct that consists of a highly unreasonable act, or omission, that is an 'extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" *SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th Cir.2001) (quoting *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1569 (9th Cir.1990) (en banc)). Violations of sections 17(a)(2) and (3), on the other hand, require a showing of negligence. *Dain Rauscher, Inc.*, 254 F.3d at 856.

■■■■ The Second and Third Claims for Relief plead fraud with sufficient particularity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure, especially when Zaucha fails to identify how any particular claim is insufficiently pled. The court is unpersuaded by Zaucha's argument that he was merely a "passive, non-participant." *See* ECF No. 97, PageID # 1079. To the contrary, the Complaint alleges that Zaucha was an active participant in the fraud.

Specifically, the Complaint alleges that, beginning in 2009, Left Behind issued Zaucha approximately 1.7 billion shares of its common stock, in exchange for Zaucha's consulting services. *Id.* ¶¶ 3–4, 23–27, 37, PageID #s 2, 6–8, 9–10. Zaucha's consulting service responsibilities arose pursuant to consulting agreements between Left Behind and Zaucha. These agreements, however, did not specify his job duties.

*Id.* ¶ 28, PageID # 8. The Complaint alleges that Zaucha did little consulting. It alleges that he may have authored a script used by Left Behind staff who called pastors from a free database maintained by another entity. *Id.* ¶ 32, PageID #s 8–9. Zaucha is also alleged to have run staff meetings and to have provided informal counseling to employees, rather than the consultation services contemplated by the plain language of the agreements. *Id.*

The Complaint alleges that, while Zaucha was a Left Behind consultant, Left Behind was unprofitable and severely undercapitalized. *Id.* ¶ 4, PageID # 2. The Complaint alleges that the consulting agreements between Zaucha and Left Behind were a "sham," whose true purpose was to enable Zaucha to sell millions of unregistered shares of Left Behind common stock, kicking back stock proceeds to Left Behind, which was in need of funds. *Id.* ¶¶ 36 and 55, PageID # 9 and 13.

Supposedly at Lyndon's direction, Zaucha promptly offered for sale and sold the stock he received under the consulting agreement through six brokerage houses, reaping approximately $4.6 million in sales proceeds. *Id.* ¶ 48, PageID # 12. Zaucha then allegedly kicked back approximately $3.3 million of these proceeds to Left Behind. *Id.* ¶ 4, PageID # 2. Zaucha takes issue with the Complaint's allegations of "kick backs," calling those references vague and conclusory. *See* ECF No. 97, PageID # 1080. However, the Complaint details what it means by "kick backs." First, it alleges that Zaucha paid Left Behind $871,169 in "early-sell fees." *See* Complaint ¶¶ 5 and 97, PageID #s 2 and 24. Second, Zaucha supposedly kicked back money to Left Behind through allegedly fake sales. The Complaint alleges that Zaucha's company, Lighthouse, purchased about $1.3 million of Left Behind's old inventory, but did not do so to sell that inventory. Instead, Lighthouse sold very

little of the inventory for a few thousand dollars and gave most of it away. *Id.* ¶¶ 6 and 67–68, PageID # 2–3, and 15–16. Third, Zaucha also supposedly "kicked back" about $1 million to Left Behind in the form of "loans" and "investments." *Id.* ¶¶ 8 and 97, PageID #s 3 and 24.

The Complaint further alleges that Zaucha knew that, under SEC Rule 144, 17 C.F.R. § 230.144, the common stock he received for his consulting services was restricted stock that could not be sold within a six-month period. *Id.* ¶ 40, PageID # 10. To get around this restriction, Lyndon allegedly sent faxes to Left Behind's stock transfer agent, asking that "New Restricted Stock Certificates" be issued to Zaucha with the following instruction, "Note, hold for 144 paperwork to remove legend." The faxes also backdated the beneficial ownership date to six months earlier. *Id.* ¶ 42, PageID # 10.

As noted earlier in this order, the "144 paperwork to remove legend" referred to opinion letters from Left Behind's attorney, which based its opinions on Zaucha's "Seller's Representation Letter" for a "non-affiliate." Zaucha supposedly further represented that his stock "has been owned and fully paid for ... in excess of one (1) year." *Id.* ¶ 44, PageID # 11. Zaucha's representations were allegedly false, in that he was a Left Behind "affiliate" controlled by Lyndon. *Id.* ¶ 46, PageID # 11.

From November 2009 until June 2011, based on Zaucha's representations, Left Behind's attorney issued more than 20 opinion letters addressed to the transfer agent that "opined" that Zaucha's shares of Left Behind could be sold by Zaucha without registering them with the SEC in accordance with Rule 144. *Id.* ¶ 45, PageID # 11.

Based on these opinion letters, Left Behind's transfer agent removed the restrictive legends from the common stock and sent the stock to Zaucha's brokerage accounts, from which Zaucha sold the shares into the market. *Id.* ¶ 47, PageID # 11. As detailed in Paragraph 48 of the Complaint, between August 4, 2009, and October 10, 2011, Zaucha had accounts at six different brokerage firms that sold a total of more than 1.7 billion unregistered shares of Left Behind for more than $4.6 million. *Id.* ¶ 46, PageID # 12.

The Complaint also alleges that, in an attempt to conceal the true nature of his stock sales, which had the effect of making Left Behind appear more profitable, on or about July 29, 2011, Zaucha sent to its auditors a letter in which he knowingly or recklessly made various misrepresentations, which are detailed in the Complaint. *Id.* ¶¶ 72–74, PageID # 16–17. Using these representations, Left Behind allegedly issued false and misleading quarterly and annual statements for 2011. *See id.* ¶¶ 81–99.

To the extent Zaucha argues that the Complaint lacks factual assertions going to "scienter," the court disagrees with him. As set forth above, the Complaint alleges that Zaucha knew of the restriction on the sale of his securities and took affirmative steps to get the restriction removed. He also allegedly sent Left Behind's auditors false information to hide kick backs. These allegations are sufficient to allege intentional conduct by Zaucha.

Given these detailed allegations, the Complaint sufficiently alleges its fraud-based claims.

## IV. CONCLUSION.

For the reasons set forth above, the court denies Zaucha's motion to dismiss, ECF No. 97.

IT IS SO ORDERED.